**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 11:50 am, Dec 03, 2009

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| | ) | Number 08-11806 |
| CUSTOM CONTRACTORS AND | ) | |
| ASSOCIATES, INC., | ) | |
| | ) | |
| DEBTOR | ) | |
| ———————————————— | ) | |
| | ) | |
| AFB&T, A GEORGIA STATE BANK, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | Number 09-01002 |
| CUSTOM CONTRACTORS AND | ) | |
| ASSOCIATES, INC., | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| A. STEPHENSON WALLACE, | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| | ) | |
| DEFENDANTS | ) | |
| ———————————————— | ) | |

## ORDER

This order addresses cross-motions for summary judgment. AFB&T, a Georgia State Bank ("AFB&T") seeks reinstatement of its security deed that was erroneously cancelled by AFB&T. Conversely, A. Stephenson Wallace, the Chapter 7 Trustee ("Trustee") argues the property is unencumbered by this security deed because of his status as a bonafide purchaser for value without notice pursuant to 11

U.S.C. §544(a).

## UNDISPUTED FACTS

On or about December 2, 2005, AFB&T made a $595,000.00 loan to Custom Contractors and Associates, Inc. ("Debtor") to purchase real property on Peach Orchard Road, Augusta, Richmond County, Georgia ("Peach Orchard Road Property"). (Mot. for Summ. J., Ex. B, Dckt. No. 11.)  In connection with this loan, Debtor executed in favor of AFB&T, a Deed to Secure Debt pledging the Peach Orchard Road Property to AFB&T as collateral for the loan.  (Mot. for Summ. J., Ex. C, Dckt. No. 11.)

On December 28, 2005, AFB&T made a different loan to Debtor in the amount of $1,500,000.00 to purchase certain lots in the Gordon Woods and Spirit Pointe subdivisions (collectively "Gordon Woods Property"). (Aff. of Jody Patton, Dckt. No. 11.)  In connection with this loan, the Debtor executed in favor of AFB&T, a deed to secure debt pledging the Gordon Woods Property to AFB&T as collateral for the loan.  (Aff. of Jody Patton, Dckt. No. 11.) These two loans are unrelated to each other.  (Aff. of Jody Patton, Dckt. No. 11.)

On or about September 1, 2006, Debtor paid the release price for several of the lots encumbered by the security deed on the Gordon Woods Property.  "On or about October 4, 2006, AFB&T, intending to release [Gordon Woods'] lots . . . erroneously executed

2

and subsequently filed a release of the Peach Orchard [Road] Security Deed." (Aff. of Jody Patton, Dckt. No. 11.) The specific cancellation language affixed to the security deed provides:

> The debt which the within named instrument was given to secure having been paid in full, the Clerk of the Superior Court . . . is hereby directed to cancel same of record and to mark the same satisfied of record.

(Complaint, Ex. C, Dckt. No. 1, Adv. No. 09-01002.) This cancellation was affixed to the security deed encumbering the Peach Orchard Road Property and signed and attested by officials from AFB&T and recorded in the appropriate real estate records.

At the time of the recording of the cancellation, the debt involved in the Peach Orchard Road Property remained outstanding. In fact, subsequent to the cancellation, the note purportedly secured by the Peach Orchard Road Property security deed was renewed three different times; however, no action was ever taken in the real estate records to indicate this debt was still outstanding. At the time the bankruptcy petition was filed, the cancellation of the security deed on the Peach Orchard Road Property was the last transaction recorded in the real estate records.

In August of 2008, Debtor filed its chapter 11 bankruptcy petition. Thereafter, in February 2009, AFB&T filed a complaint against Debtor seeking reinstatement of its erroneously cancelled security deed. (Dckt. No. 1, Adv. No. 09-01002.) Summons was

3

issued on the same day.  (Dckt. No. 2, Adv. No. 09-01002.)  On March
23, 2009, AFB&T requested the summons be reissued which was done the
same day.  (Dckt. No. 8, Adv. No. 09-01002.)  AFB&T filed a Motion
for Summary Judgment on March 25, 2009, the same date it served the
complaint and summons upon Debtor's counsel.  (Dckt. Nos. 11 and 12,
Adv. No. 09-01002.)  Debtor had 30 days from the issuance of the
summons to respond to the complaint, or until April 22, 2009.  On
April 1, 2009, before the answer was due, the bankruptcy case was
converted to one under chapter 7.

A hearing was held on June 25, 2009 to determine the
effect of the conversion upon AFB&T's motion for summary judgment.
At the hearing, AFB&T acknowledged the Trustee needed to be added as
a party, and orally agreed to give the Trustee until August 30, 2009
to respond to both the complaint and the Motion for Summary
Judgment.[1] Based upon the parties' agreement, the Court ordered the
Trustee to file an answer and a response to the summary judgment
motion on or before August 30, 2009.  On August 8, 2009, the Trustee
filed his answer and a motion for summary judgment as well as a
response to AFB&T's motion for summary judgment.

---

[1]   On July 24, 2009, AFB&T amended the complaint to add the
Trustee as a defendant.  In the amended complaint, AFB&T recited it
added the Trustee without waiving its right to seek a default.

4

## CONCLUSIONS OF LAW

AFB&T argues it is entitled to summary judgment because: (i) the strong arm powers of the Trustee are inapplicable to the current adversary proceeding; and (ii) the Trustee and Debtor-in-Possession are in default for failing to timely file an answer. AFB&T also seeks to retroactively reinstate the erroneously cancelled security deed on the Peach Orchard Road Property. Conversely, the Trustee argues pursuant to his §544(a) strong arm powers, he is entitled to avoid AFB&T's lien on the Peach Orchard Road Property. For the following reasons, AFB&T's motion for summary judgment is denied and the Trustee's motion for summary judgment is granted.

**Summary Judgment Standard**.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c);[2] see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

> [A] party seeking summary judgment always bears the initial responsibility of informing the . .

---

[2] Pursuant to Federal Rule of Bankruptcy Procedure 7056, Rule 56 of the Federal Rules of Civil Procedure is applicable in bankruptcy adversary proceedings.

5

> . court of the basis for its motion, and
> identifying those portions of the pleadings,
> depositions, answers to interrogatories, and
> admissions on file, together with the
> affidavits, if any, which it believes
> demonstrate the absence of a genuine issue of
> material fact.

Celotex, 477 U.S. at 323 (internal quotations omitted). "In determining whether the movant has met its burden, the reviewing court must examine the evidence in a light most favorable to the opponent of the motion. All reasonable doubts and inferences should be resolved in favor of the opponent." Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1502 (11th Cir. 1985) (citations omitted), cert. denied, 475 U.S. 1107 (1986). However, once the moving party has properly supported its motion with such evidence, the party opposing the motion,

> may not rest upon the mere allegations or
> denials of his pleading, but must set forth
> specific facts showing that there is a genuine
> issue for trial. Based on [Rule 56] . . . the
> plaintiff could not defeat the properly
> supported summary judgment motion of a
> defendant . . . without offering any
> significant probative evidence tending to
> support the complaint . . . . Instead, the
> plaintiff must present affirmative evidence in
> order to defeat a properly supported motion for
> summary judgment. This is true even where the
> evidence is likely to be within the possession
> of the defendant, as long as the plaintiff has
> had a full opportunity to conduct discovery.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986) citing First Nat'l Bank of Ariz. v. Cities Servs. Co., 391 U.S. 253, 290

6

(1968) (internal quotations omitted)); see also Fed. R. Civ. P. 56(e).

**Strong Arm Powers.**

As to real property, the Trustee enjoys the status of a hypothetical bona fide purchaser for value pursuant to 11 U.S.C. §544(a).[3] See Gordon v. Terrace Mortgage Co., (In re Kim), 571 F.3d 1342, 1345, n. 3 (11th Cir. 2009)("The issue of notice is critically important in the Chapter 7 bankruptcy context because a trustee may avoid a lien on real property if a hypothetical bona fide purchaser could have taken an interest greater than that held by the lienholder pursuant to 11 U.S.C. §544(a); the failure to provide constructive notice would present such a circumstance."); In re

_____

[3]  11 U.S.C. §544(a) states in pertinent part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

AO 72A
(Rev. 8/82)

Ivester, 398 B.R. 408, 416 (M.D.N.C. 2008); First Southern Bank v. Stanphill (In re Stanphill), 312 B.R. 691, 694 (Bankr. N.D. Ala. 2004) citing In re Boardwalk Dev. Co., Inc., 72 B.R. 152, 154 (Bankr. E.D. N.C. 1987)("[S]ection 544(a) . . . provides that a trustee in bankruptcy shall have the rights and powers of a hypothetical bona fide purchaser as of the commencement of the case, without regard to any actual knowledge or notice of the trustee. 'Under this section, the trustee may defeat a claim against the debtor's estate if, under applicable state law, a hypothetical bona fide purchaser of the property in question would have prevailed over the claim as of the date of the bankruptcy filing.'").

> Although under state law a court must determine the existence of 'actual notice' of an individual claiming the status of a bona fide purchaser, 11 U.S.C. §544(a) clearly establishes a different federal rule in granting certain 'strong arm powers' to the trustee. The Code empowers the trustee to avoid the unrecorded liens 'without regard' to any knowledge the trustee may possess. Moreover, 11 U.S.C. §544(a) clearly grants the trustee its powers 'as of the commencement of the case.'[4]

Stewart v. Brown (In re Watkins), Chapter 13 No. 95-20389, slip op.

---

[4] Even though this case was converted from a chapter 11 case to a chapter 7 case on April 1, 2009, the "commencement of the case" remains August 28, 2009. See 11 U.S.C. §348(a)(conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief").

8

at 5 (Bankr. S.D. Ga. October 23, 1995)(J. Davis); 5 <u>Collier On</u>
<u>Bankruptcy</u>, ¶544.06(Alan N. Resnick and Henry J. Sommer, eds., 15th
ed. rev. 2009)("[A]s a hypothetical bona fide purchaser, the trustee
is deemed to have conducted a title search, paid value for the
property and perfected its interest as a legal title holder as of
the date of the commencement of the case."). Therefore, the Trustee
will have priority over AFB&T's claim, if under Georgia law, a
hypothetical bona fide purchaser of the Peach Orchard Road Property
would prevail over AFB&T's interest as of the date of commencement
of the case.

> The Eleventh Circuit has defined a bona fide purchaser as:
>
>> [o]ne who buys something for value without
>> notice of another's claim to the property and
>> without actual or constructive notice of any
>> defects in or infirmities, claims, or equities
>> against the seller's title; one who has in good
>> faith paid valuable consideration for property
>> without notice of prior adverse claims.

<u>In re Hedrick</u>, 524 F.3d 1175, 1181 (11th Cir. 2008), <u>citing</u> <u>Black's</u>
<u>Law Dictionary</u> 1271 (8th ed. 1999). Under Georgia law:

> Every unrecorded voluntary deed or conveyance
> of land made by any person shall be void as
> against subsequent bona fide purchasers for
> value without notice of such voluntary deed or
> conveyance; provided, however, that, if the
> voluntary deed or conveyance is recorded in
> accordance with Code Section 44-2-1,[5] it shall

---

[5]   O.C.G.A. §44-2-1 provides:

have priority over subsequent deeds or conveyances to the described land.

O.C.G.A. §44-2-3.

In the current case, the issue is whether at the time of commencement of the bankruptcy case, a hypothetical purchaser should have been aware of AFB&T's outstanding interest in the Peach Orchard Road property. See Flatau v. Madonian (In re Sheetex, Inc.), 1999 WL 739628 at *7 (Bankr. M.D. Ga. September 21, 1999)(issue is "if a hypothetical purchaser should have been aware of defendant's claimed interest, then the hypothetical purchaser could not have become a bona fide purchaser and the Trustee will have no avoidance power. . . ."). "It is well settled under Georgia law that 'any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry, is sufficient to constitute notice of a prior unrecorded deed' . . . ."); Macleod v. Suntrust Bank Northwest Georgia (In re Henderson), 284 B.R. 515 (Bankr. N.D. Ga. 2002) citing Flatau v. Madonian (In re Sheetex, Inc.), 1999 WL 739628 at

---

Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land is located. A deed may be recorded at any time; but a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed without notice of the existence of the prior deed.

AO 72A
(Rev. 8/82)

\*7, 1999 (Bankr. M.D. Ga. 1999) <u>citing</u> <u>Price v. Watts</u>,158 S.E.2d 406, 407 (Ga. 1967); <u>Gardner v. Granniss</u>, 57 Ga. 539 (1876)); <u>see also</u>, <u>Hunt v. Argent Mortgage Co. (In re Hunt)</u>, 306 F. App'x 455, 457 (11th Cir. 2009).

In <u>Henderson</u>, a bank mistakenly cancelled a security deed, however, prior to the debtor's bankruptcy filing, an affidavit from the bank was recorded in the appropriate real estate records explaining that the release was filed in error.   <u>In re Henderson</u>, 284 B.R. at 519.   Given these facts, the court concluded the affidavit was sufficient to place the trustee on notice and therefore the bank's interest could not be voided by the trustee. <u>In re Henderson</u>, 284 B.R. at 519.

Unlike <u>In re Henderson</u>, in the case <u>sub judice</u>, as of the petition date, there is nothing in the real estate records to "place a man of ordinary prudence fully upon his guard, and induce serious inquiry" about AFB&T's lien upon the Peach Orchard Road Property. The last document recorded in the real estate records regarding the Peach Orchard Road Property is the cancellation of AFB&T's lien. While the promissory note may have been subsequently renewed, these renewals were not recorded in the public land records and would not have put a bona fide purchaser on inquiry notice.[6]   For these

---

[6] As customary, promissory note and renewals are not recorded in the real estate records.

11

reasons, I find pursuant to §544(a)(3), AFB&T's interest in the Peach Orchard Road Property is voided.

AFB&T argues since Georgia law allows for the reinstatement of an erroneously cancelled security deed, then under §546(b)(1)(A)[7] the Trustee's position does not take priority of AFB&T's. I disagree. AFB&T failed to reinstate its security deed prior to the Trustee intervening as a bona fide purchaser, and therefore AFB&T's claim does not have priority over the Trustee.

Section 546 subjects the Trustee's strong arm powers to "any applicable law" that permits perfection of an interest to be effective against an entity that acquires rights to the property before that interest is perfected. 11 U.S.C. §546(b). "The purpose of section 546(b) is to 'protect, in spite of the surprise

---

[7]    Section §546(b) of the Bankruptcy Code states in pertinent part:

> (b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that--
>
> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
>
> (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation

12

AO 72A
(Rev. 8/82)

intervention of a bankruptcy petition, those whom State law protected by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection.'" 5 Collier On Bankruptcy, ¶546.03[1] (Alan N. Resnick and Henry J. Sommer,eds., 15th ed. rev. 2009) citing S. Rep. No. 989, 95th Cong., 2d Sess. 86-87 (1978). The legislative history of §546 states:

> The trustee's rights and powers under certain avoiding powers are limited by section 546. First, if an interest holder against whom the trustee would have rights still has, under applicable non-bankruptcy law, as of the date of the petition, the opportunity to perfect his lien against an intervening interest holder, then he may perfect his interest against the trustee. . . . The rights granted to a creditor under this subsection prevail over the trustee <u>only if the transferee has perfected the transfer in accordance with applicable law, and that perfection relates back to a date that is before the commencement of the case</u>.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 371 (1977)(emphasis added).

> The applicable law must provide that perfection, or maintenance or continuation of perfection of an interest in property relates back in time to be superior in priority to the interest of any entity acquiring rights in the property before the date of perfection or the date on which action is taken to effect maintenance or continuation of perfection in the property. Furthermore, perfection must relate back to a prepetition period, because the trustee becomes an intervening lien creditor under section 544(a) of the Bankruptcy Code upon the commencement of the bankruptcy case.

13

5 <u>Collier On Bankruptcy</u>, ¶546.03[2][c][i](Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2009); <u>Fidelity Fin. Services, Inc. v. Fink</u>, 522 U.S. 211, 215-16 (1998)("Section 546(b)(1)(A) speaks of state laws that permit 'perfection . . . to be effective . . . before the date of perfection.'")(alterations in original).

The usual application of §546 is for liens that relate back in time, such as mechanics' and materialman liens or purchase money security interests.  <u>See</u> <u>WWG Industr., Inc. v. United Textiles, Inc. (In re WWG Industr., Inc.)</u>, 772 F.2d 810 (11th Cir. 1985)(pursuant to §546(b), since Georgia's materialman's statute allows for the relation back, the mechanic's lien was superior to the debtor-in-possession's interest).

Georgia case law recognizes a creditor's ability to reinstate its mistakenly cancelled security deed.  <u>See</u> <u>Eldridge v. Forman</u>, 155 S.E. 476 (1930)(allowing reinstatement of a mistakenly cancelled security deed).  However, these reinstated security deeds retain their priority only if there is no intervening lien of a bona fide purchaser without knowledge.  <u>Murray v. Johnson</u>, 152 S.E.2d 739, 741 (Ga. 1966); 2 Pindar's Ga. Real Estate Law & Proc. With Forms §21-54, Cancellation (2009)("A cancellation obtained by fraud or mistake without payment may itself be cancelled by a court of equity, but not after the rights of innocent third persons have intervened.").  In <u>Murray</u>, the Georgia Supreme Court has held that

14

where a prior deed was mistakenly cancelled of record and the property was sold to a bona fide purchaser during the period of time the public records showed the deed to secure debt was cancelled and before the creditor had taken action to give notice of its rights, the bona fide purchaser will be protected. Murray, 152 S.E.2d at 741 (Ga. 1966). Under the rationale of Murray, the Trustee, as a bona fide purchaser, prevails over AFB&T because at the commencement of the bankruptcy case, the public records showed the cancellation of the deed to secure debt. See also In re Sheetex, Inc., 1999 WL 739628 at *8-9 (avoiding defendant's interest pursuant to §544(a)(3) because defendant had taken no action to put the world on notice of her title or right to the property).

AFB&T seeks to distinguish Murray on the grounds that the Trustee, as an "intervening judgment lien creditor," did not pay new value as the Murray purchasers did and did not rely on the apparent cancellation. However, the Trustee is a hypothetical bona fide purchaser under §544(a)(3), not just a judgment lien creditor. See 5 Collier On Bankruptcy, ¶544.06 (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2009) ("[A]s a hypothetical bona fide purchaser, the trustee is deemed to have conducted a title search, paid value for the property and perfected its interest as a legal title holder as of the date of the commencement of the case."). Statutorily, the proper focus is upon the Trustee's status as

15

hypothetical bona fide purchaser for value and whether a purchaser would have been put on inquiry notice as to AFB&T's interest.  <u>See</u> <u>In re Ivester</u>, 398 B.R. at 416; <u>In re Stanphill</u>, 312 B.R. at 694; <u>In re Sheetex, Inc.</u>, 1999 WL 739628 at *6.  As previously discussed, there was nothing of record to put a bona fide purchaser on notice of AFB&T's outstanding claim.  For these reasons, I find <u>Murray</u> supports the conclusion that AFB&T's interest is voidable by the Trustee pursuant to 11 U.S.C. §544(a)(3).

AFB&T also argues the doctrine of equitable subrogation supports recognition of its claim as superior to the Trustee.  I disagree.  Equitable subrogation may benefit a party who 'advances money to pay off an [earlier] encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance . . . [and] the new security is for any reason not a first lien on the property.'"  <u>In re Hedrick</u>, 524 F.3d at 1182 (alteration in original).  By AFB&T's own account, these two loans were unrelated.  This is not a situation where AFB&T advanced money to pay off an earlier loan and should step into the shoes of the senior lien holder over a junior lien holder.  AFB&T concedes the facts of this case are different from the facts of the cases applying equitable subrogation, but argues the equitable principles are the same.  However, given the facts of this case, AFB&T's equitable subordination argument fails to trump the Trustee's §544

16

bona fide purchaser for value status.  See In re Sheetex, Inc., 1999 WL 739628 at *8-9 ("Under section 544(a)(3), the trustee stands in the shoes of a hypothetical bona fide purchaser of real property who might have purchased the property from Debtor at the time of the commencement of the case.").  "The purpose of the 'strong arm clause' is to cut off unperfected security interests . . . as of the commencement of the case."  5 Collier On Bankruptcy ¶544.03[2] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2009).  Because it appeared to the world that the security deed on the Peach Orchard Road Property was cancelled, AFB&T's interest may be avoided by the Trustee.  Id. at 9.

**Default**.

AFB&T also contends the Trustee is barred from asserting any argument in this case because the adversary proceeding is in default as Debtor failed to timely answer the complaint prior to the conversion.  As a result of this purported default, AFB&T argues the Trustee is barred from asserting his strong arm powers since he failed to seek to open default.  However, under the facts of this case, this argument fails.

In this case, at AFB&T's request, the summons was re-issued on March 23, 2009 and served by AFB&T upon Debtor (the chapter 11 debtor in possession) on March 25, 2009.  Debtor had 30 days from the re-issuance of the summons to respond to the complaint

17

or until April 22, 2009.  (Reissued Summons, Dckt. No. 10.); Fed. R. Bankr. P. 7012.  However, before an answer was due by Debtor, the case was converted to one under Chapter 7 on April 1, 2009.

Upon the conversion, the Trustee was appointed.  Even though not technically a party to the adversary case, the Trustee sought a continuance of the May 28, 2009 hearing on AFB&T's motion for summary judgment.  The continued hearing was held on June 25, 2009, at which time, AFB&T agreed to add the Trustee as a defendant, and to give the Trustee until August 30, 2009 to respond to both the complaint and the motion for summary judgment.  At the hearing, based upon the consent of the parties, I gave the Trustee until August 30, 2009 to file an answer and respond to the motion for summary judgment.  On July 24, 2009, AFB&T filed an amended complaint adding the Trustee as a defendant and stating it was not waiving its right to seek a default in this case.  The Trustee filed his answer on August 8, 2009.

Based upon these facts, no default has occurred.  The Debtor was not in default before the conversion, as the case was converted before the answer was due.  The Trustee was added as a party on July 24, 2009, and timely filed his answer.  Therefore, there has not been a default.

18

For the foregoing reasons, AFB&T's Motion for Summary Judgment is ORDERED DENIED and the Trustee's Motion for Summary Judgment is ORDERED GRANTED.

Susan D. Barrett
_____
SUSAN D. BARRETT
UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 3rd Day of December, 2009.

19

AO 72A
(Rev. 8/82)